STATE of Minnesota, Respondent,

v.

Eric NMN SMITH, Appellant.

No. C3–02–96.

Court of Appeals of Minnesota.

Jan. 7, 2003.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, David C. Brown, Assistant County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, Minnesota Public Defender, Sara L. Martin, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by ANDERSON, Presiding Judge, STONEBURNER, Judge, and WRIGHT, Judge.

## OPINION

STONEBURNER, Judge.

Appellant Eric Smith challenges his conviction of motor vehicle theft, arguing that the prosecutor committed misconduct and that the district court erred by failing to remove a juror for cause; abused its discretion by failing to suppress evidence for a discovery violation; abused its discretion by failing to instruct on a lesser-included offense; and erred by diluting the reasonable-doubt standard in jury instructions. Smith also alleges that the district court abused its discretion by sentencing him as a career offender. Because we agree that the jury instruction on reasonable doubt diluted the standard, we reverse and remand.

## FACTS

Two Minneapolis police officers on patrol observed a vehicle with license plate numbers that matched the numbers of a stolen vehicle. The officers followed the vehicle, which made a right turn, pulled over, and stopped on the right side of the street. The officers testified that they never lost sight of the vehicle and that they observed the driver get out of the vehicle, walk around the front of the vehicle and approach the squad car, which by that time had stopped with lights activated, behind the stolen vehicle. No one else got out of the vehicle. The driver was later identified as appellant Eric Smith.

Appellant testified that he had been sitting on his aunt's porch and saw a vehicle stop in front of the house. Appellant testified that two men jumped out of the vehicle and ran in different directions. Appellant testified that he then walked to the vehicle, leaned over, looked into the vehicle, and saw evidence of a crime,[1] just as the police were coming down the block, so he walked up to the officers to talk to them.

Appellant was arrested and charged with theft of a motor vehicle under Minn. Stat. § 609.52, subd. 2(17) (2000). The complaint was later amended to include a count of receiving stolen property under Minn.Stat. § 609.53, subd. 1 (2000).

Three days before trial, the state informed appellant's attorney that a pawn ticket belonging to appellant and two checkbooks not in appellant's name had been found in the stolen vehicle. The district court precluded mention of these items during opening statements but denied appellant's motion to suppress the pawn ticket as a sanction for late discovery. During voir dire, the district court denied appellant's motion to excuse a juror for cause. The district court denied appellant's motion to instruct the jury that receiving stolen property is a lesser-included crime. In instructing the jury on reasonable doubt at the beginning and end of the trial, the district court told the jury, "You do not have a reasonable doubt if your doubts are based upon speculation or irrelevant details."

Appellant was convicted and sentenced as a career offender. Appellant's motion for a new trial was denied. This appeal followed.

## ISSUES

I. Did the jury instruction on reasonable doubt dilute the beyond-a-reasonable-doubt standard, constituting a violation of due process?

II. Did the district court err by failing to instruct on a lesser-included offense?

---

1. Appellant testified that he saw "chips on the floor. I know what that kind of crime was * * *." The reference is to pieces of the steering column that had been broken to facilitate starting the car without a key.

III. Did the district court abuse its discretion by failing to exclude evidence as a sanction for a discovery violation?

IV. Did the district court err by denying defense counsel's motion to remove a juror for cause?

V. Did the district court abuse its discretion by sentencing appellant as a career offender?

## ANALYSIS

I. Instructing the jury that a reasonable doubt cannot be based on speculation dilutes the beyond-a-reasonable-doubt standard.

■■■ In general, a party who fails to object to jury instructions at trial waives the right to raise the issue on appeal. *State v. Malaski*, 330 N.W.2d 447, 451 (Minn.1983). But jury instructions regarding the burden of proof concern a fundamental principle of law and may be raised on appeal even if an objection was not made at trial. *State v. Smith*, 448 N.W.2d 550, 554 (Minn.App.1989), *review denied* (Minn. Dec. 29, 1989).

■■■ Appellant argues that the district court's instruction on reasonable doubt diluted the beyond-a-reasonable-doubt standard. District courts are allowed considerable latitude in selecting the language in jury instructions. *State v. Gray*, 456 N.W.2d 251, 258 (Minn.1990). The decision to give a particular jury instruction lies within the district court's discretion "and no error results if no abuse of discretion is shown." *State v. Cole*, 542 N.W.2d 43, 50 (Minn.1996) (citation omitted). Appellant is entitled to a new trial, however, if the beyond-a-reasonable-doubt standard is diluted, because the standard triggers constitutional due-process rights. *State v. Tibbetts*, 281 N.W.2d 499, 500 (Minn.1979).

■■■ The standard beyond-a-reasonable-doubt instruction provides:

Proof beyond a reasonable doubt is such proof as ordinarily prudent men and women would act upon in their most important affairs. A reasonable doubt is a doubt based upon reason and common sense. It does not mean a fanciful or capricious doubt, nor does it mean beyond all possibility of doubt.

10 Minnesota Practice, CRIMJIG 3.03 (1999). A court generally can be secure that the standard articulated is appropriate if it uses CRIMJIG 3.03. *State v. Sap*, 408 N.W.2d 638, 641 (Minn.App.1987). Nonetheless, a court is not required to define reasonable doubt, or articulate the standard, with any specific language, so long as, taken as a whole, the instruction correctly conveys the concept. *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994).

In this case, the district court instructed the jury at the beginning of the trial and at the close of evidence:

The law requires the State to prove its case beyond a reasonable doubt. It does not require the case to be proved beyond all possibility of doubt, nor does it require that the case be proved to a mathematical certainty.

Proof beyond a reasonable doubt is simply that amount of proof that ordinary men and women rely upon in making their own most important decisions. You have a reasonable doubt if your doubts are based upon reason and common sense. You do not have a reasonable doubt if your doubts are based upon speculation or irrelevant details.

Smith argues that the term *simply*, and the phrase *you do not have a reasonable doubt if your doubts are based upon speculation* * * * diluted the beyond-a-reasonable-doubt standard.

■ We reject appellant's argument that the word *simply*, as used in the instruction, implies that the state's burden is easily met. The word is used to make clear how the definition of doubt is narrowed by the term reasonable. Considering the instruction in its entirety, *simply* indicates that the court is giving a specific definition. The district court did not dilute the beyond-a-reasonable-doubt standard by its use of the word *simply* in this context.

■ The record reflects that the district court chose to use *speculation* to replace *fanciful* and *capricious* because it believed that *speculation* is a term more commonly used and understood than *fanciful* and *capricious*. But speculation can be reasonable. In a criminal trial, the state has the burden of proving the defendant's guilt beyond a reasonable doubt. A defendant is not required to prove innocence. To return a verdict of not guilty, the jury is not required to *know* that a defendant is not guilty, only to determine that the state has not met its burden based on the evidence presented. Our criminal justice system permits the jury to make this determination based on reasonable speculation, garnered from the evidence, or lack of evidence, presented. We recognize the district court's laudable intent to clarify the beyond-a-reasonable-doubt standard for the jury by replacing a little-used word with something more common, but the instruction given required the jury to disregard reasonable speculation, thereby changing the standard and making it easier to convict. Although there is no requirement that a jury instruction be directly synonymous with the standard instructions, *speculation* has a definition that is markedly different from the definitions of *fanciful* and *capricious*.

The American Heritage Dictionary (2d Col. Ed.) defines *to speculate* as "to medi-tate on a given subject, reflect," and defines *speculation* as, "a. [t]he act of speculating. b. [c]ontemplation of a profound nature. c. [a] conclusion, opinion, or theory reached by speculating." The American Heritage Dictionary defines the word *fanciful* as "created in the fancy; unreal; tending to indulge in fancy; showing invention or whimsy in design; imaginative," and defines *capricious* as, "[c]haracterized by or subject to whim; impulsive and unpredictable; fickle."

■ The threshold of the beyond-a-reasonable-doubt standard is whether the uncertainty about what occurred in the case is reasonable, based on the evidence presented. The standard must be defined in a manner that makes clear both that a doubt must not be fanciful or capricious and that the doubt itself need not be supported to the extent of a proven fact. Substitution of *speculation* for *fanciful* and *capricious* does not accomplish this task and could lead the jury to reject a doubt based on reasonable speculation as not meeting the standard. For example, if a juror in this case expressed a doubt based on his conclusion that appellant's version of the incident seemed more likely to be true than the officers' versions, another juror might have responded "but that doubt is based on speculation, so it's not a reasonable doubt." We conclude that the use of the word *speculation* diluted the beyond-a-reasonable-doubt standard and was error.

■ An erroneous jury instruction does not always require a new trial, but proof beyond a reasonable doubt is constitutionally required to convict. *In re Winship*, 397 U.S. 358, 362, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970). Conviction of a defendant under a less stringent standard is a violation of due process. *Id.* at 364. If the district court dilutes or obscures the reasonable doubt standard, appellant is en-

titled to a new trial. *Tibbetts,* 281 N.W.2d at 500.

## II. Failure to instruct on lesser-included offense was not error.

Appellant also argues that the district court abused its discretion by refusing to give an instruction on lesser-included offenses. The court should submit an instruction on a lesser charge when the offense in question is an "included" offense and a rational basis exists for the jury to convict appellant of the lesser offense and acquit him of the greater crime. *State v. Buntrock,* 560 N.W.2d 383, 386 (Minn.1997).

The district court stated that there were no facts in evidence in this case which would make appellant not guilty of the greater crime, but guilty of the lesser. The record supports this determination and the district court did not abuse its discretion by denying the requested instruction.[2]

## III. Denial of motion to suppress evidence as a discovery sanction was not abuse of discretion.

Appellant contends that the district court abused its discretion by not sanctioning the prosecution's discovery violation by suppressing the pawn slip, and did not provide an adequate remedy for the late disclosure of the existence of the checkbooks, which were potentially exculpatory evidence, corroborating appellant's version of the facts. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) (holding that the due process clause is violated if the prose-

cution fails to disclose material evidence that is favorable to a criminal defendant).

> The imposition of sanctions for violations of discovery rules and orders is a matter particularly suited to the judgment and discretion of the trial court.

*State v. Lindsey,* 284 N.W.2d 368, 373 (Minn.1979) (citation omitted). Such a determination will not be overturned absent an abuse of discretion. *Id.* By exercising its discretion in sanctioning a discovery violation, the district court judge should take into account

> (1) the reason why disclosure was not made; (2) the extent of prejudice to the opposing party; (3) the feasibility of rectifying that prejudice by a continuance; and (4) any other relevant factors.

*Lindsey,* 284 N.W.2d at 373 (citation omitted). Reviewing courts should analyze the court's decision, under an abuse of discretion standard, with these considerations in mind. *Id.*

The rules of criminal procedure require the prosecution to disclose to the defense all exculpatory evidence and all relevant documents. Minn. R.Crim. P. 9.01, subd. 1(3)(6). The prosecution has the duty to learn of any evidence known to others acting on the government's behalf, including police, and to disclose this information to the defense. *State v. Williams,* 593 N.W.2d 227, 235 (Minn.1999). Failure to disclose is not excused because the prosecutor herself was unaware of the information. *Id.* Such a failure constitutes a discovery violation. *Id.*

Appellant was made aware of the pawn slip three days before trial and had access to the evidence before testimony

---

2. The district court appropriately recognized that appellant could only be convicted of one of the crimes charged because the facts used to prove each crime were identical. *See State v. Banks,* 358 N.W.2d 133, 135 (Minn.App.

1984) (holding that a conviction for receiving stolen property based on possession must be vacated because it involved the same act constituting theft based on retaining property).

regarding the slip was presented. Although he moved to suppress the pawn slip, appellant did not request a continuance or any additional time for investigation beyond the long lunch hour and overnight recess that the district court stated would be adequate. The district court did not allow mention of the pawn slip in opening statements and required that the state keep its witnesses available for recall by appellant after the overnight recess. The district court did not abuse its discretion by failing to suppress the pawn slip as a sanction for a discovery violation.

 In order to establish a *Brady* violation for late disclosure of the checkbooks found in the stolen vehicle, appellant must demonstrate that (1) the evidence at issue was favorable to him; (2) the evidence was willfully or inadvertently suppressed by the prosecution; and (3) he was prejudiced as a result. *Woodruff v. State*, 608 N.W.2d 881, 886 (Minn.2000).

 Appellant had knowledge of the checkbooks three days before the trial began and did not request a continuance to investigate further. At appellant's request, the district court required the state to run a criminal history check on the persons named on the checkbooks. Appellant used the existence of the checkbooks to corroborate his version of the facts. He did not request additional time to investigate and has not alleged that additional relevant information exists that could have been discovered with additional time. *See Woodruff*, 608 N.W.2d at 886 (indicating that exculpatory information disclosed late in trial may not be prejudicial if defendant had opportunity to fully examine witnesses with the evidence and could not show that court's remedy for the violation had been inadequate). Appellant has failed to establish a *Brady* violation with regard to late disclosure of the checkbooks.

## IV. Failure to dismiss juror for cause was not error.

Appellant argues that the district court improperly denied his request to remove a juror for cause who had previously been an assistant attorney general.

 The exclusive grounds on which a juror can be challenged for implied bias are provided in Minn. R.Crim. P. 26.02, subd. 5. *State v. Alladin*, 408 N.W.2d 642, 649 (Minn.App.1987), *review denied* (Minn. Aug. 12, 1987). In order to make a successful claim of juror bias, an appellant must show that (1) the juror was subject to challenge for cause; (2) actual prejudice resulted from the failure to dismiss the juror; and (3) the challenging party made an appropriate objection. *State v. Stufflebean*, 329 N.W.2d 314, 317 (Minn.1983). Appellant contends that the juror should have been removed under Minn. R.Crim. P. 26.02, subd. 5(1), providing that the district court may remove a juror for good cause if there exists:

a state of mind on the part of the juror, in reference to the case or to either party, which satisfies the court that the juror cannot try the case impartially and without prejudice to the substantial rights of the party challenging.

Minn. R.Crim. P. 26.02, subd. 5(1).

 Appellant made a motion to challenge the juror for cause, as required under the Stufflebean test. But appellant has failed to show that the court improperly determined that the juror could be impartial. *See State v. Logan*, 535 N.W.2d 320, 324 (Minn.1995).

As a general rule, the trial court's resolution of the question whether the prospective juror's protestation of impartiality is believable is entitled to "special deference" because "the determination is essentially one of credibility and therefore largely one of demeanor."

*Logan,* 535 N.W.2d at 323 (quotations omitted)

 At all times during voir dire, the juror maintained she could remain neutral. The juror made no statements at any time indicating that she was biased against appellant. The district court allowed considerable time for appellant to discover any reasons for dismissal for cause. The district court did not abuse its discretion by denying appellant's motion to dismiss the juror for cause.

Appellant also alleges that the cumulative effect of errors that occurred at trial, including claims that the district court improperly admitted a burglary conviction for impeachment and improperly excluded admission of a prior consistent statement and claims of prosecutorial misconduct. Because we are reversing and remanding for a new trial, we do not reach these issues in detail, but note that our careful review of the record leads us to conclude that these claims are without merit.

### V. Sentencing as career offender was not abuse of discretion.

 This court will not disturb a district court's departure from a presumptive sentence absent a clear abuse of discretion. *State v. Flemino,* 529 N.W.2d 501, 503 (Minn.App.1995), *review denied* (Minn. May 31, 1995). Minnesota law allows a sentencing court to impose an aggravated durational departure from the presumptive sentence if the felony defendant has a minimum of five prior felony convictions and the felony at issue was a part of a pattern of criminal conduct. Minn.Stat. § 609.1095 (2000). Appellant argues that his prior felonies do not constitute a "pattern of criminal conduct" and that the district court abused its discretion by sentencing him as a career offender.

A pattern is the organizing principle or relationship binding certain things, in this case incidents of criminal conduct, together. Such a "pattern of criminal conduct" may be demonstrated by proof of criminal conduct similar, but not identical, in motive, purpose, results, participants, victims or other shared characteristics.

*State v. Gorman,* 546 N.W.2d 5, 9 (Minn. 1996). A pattern of property crimes can satisfy the statute and there is no time limit for which convictions may be used to show a pattern of criminal conduct. *State v. Worthy,* 583 N.W.2d 270, 280 (Minn. 1998) (holding that a defendant with prior felony convictions including possession of a dangerous weapon, possession of a controlled substance, receiving stolen property and attempted burglary was properly sentenced as a career offender). Appellant's current conviction is for auto theft. His prior adult felony convictions include (1) theft from a person; (2) auto theft; (3) forgery; (4) attempted second-degree burglary; and (5) three fifth-degree controlled substance crimes. The district court did not abuse its discretion by sentencing appellant as a career offender given his pattern of committing property crimes.

### DECISION

Instructing the jury that "you do not have a reasonable doubt if your doubt is based upon speculation * * *" diluted the standard of proof beyond a reasonable doubt, violating appellant's right to due process, and requiring a new trial.

Reversed and remanded.